United States District Court

For the Northern District of California

1

2

**NOT FOR CITATION**

3

UNITED STATES DISTRICT COURT

4

NORTHERN DISTRICT OF CALIFORNIA

5

6

7   IDENTITY ARTS, a California Limited
Liability Company,

8

Plaintiff,                              No. C 05-4656 PJH

9

v.                               **ORDER DENYING
MOTION FOR PRELIMINARY
INJUNCTION**

10

BEST BUY ENTERPRISE SERVICES,
11   INC., a Minnesota Corporation, BEST
BUY CO., INC., a Minnesota Corporation,
12   and DOES 1 through 100, inclusive,

13          Defendants.
_____/

14

15          Plaintiff's motion for preliminary injunction came on for hearing before this court on

16   January 18, 2006.  Plaintiff, Identity Arts LLC ("Identity Arts") appeared through its counsel,

17   Drexel A. Bradshaw.  Defendants, Best Buy Enterprise Services, Inc. and Best Buy Co.,

18   Inc. ("Best Buy") appeared through their counsel, Joel D. Covelman and Robert F. Hinton.

19   Having read the parties' papers and carefully considered their arguments and the relevant

20   legal authority, and good cause appearing, the court hereby DENIES the motion as follows,

21   for the reasons stated at the hearing.

22                                    **BACKGROUND**

23          This is an action for copyright infringement.  In May 2000, while at a movie

24   presentation of "Gladiator," David Janssen (who co-founded plaintiff company) witnessed a

25   fellow movie-goer being harassed and heckled for receiving a cell phone call mid-movie.

26   As a result of that incident, Janssen was struck with an idea – to create faux movie trailers

27   to be shown prior to the commencement of movies, in which cell phone users would be

28   encouraged to shut off their phones.  To implement his idea, Janssen enlisted the help of

United States District Court

For the Northern District of California

1   David Bobrow, and the two began working on plans to film and market a short version of a

2   faux movie trailer known as the "Submarine Spot."

3   　　　In March 2002, Janssen registered a script for the Submarine Spot with the U.S.

4   Copyright Office, and that same month, Janssen and Bobrow filmed several scenes of the

5   copyrighted script and edited them into a rough cut of the Submarine Spot.  Armed with the

6   rough cut Submarine Spot, Janssen and Bobrow co-founded plaintiff Identity Arts, LLC,

7   ("Identity Arts") in order to produce, promote, and sell the rough cut spot to cell phone

8   manufacturers, cell phone service providers, and movie theater chains.

9   　　　In June 2003, Identity Arts sent the rough cut Submarine Spot to defendants Best

10   Buy et al. ("Best Buy").  Thereafter, and throughout 2003, the parties negotiated an

11   agreement allowing Best Buy to use a final edit of the Submarine Spot and to market it to

12   potential advertisers and movie theaters.  The final agreement, which called for Best Buy to

13   pay Identity Arts the sum of $390,000 in exchange for the spot, was executed on October

14   7, 2003.

15   　　　After the final Submarine Spot was successfully promoted by Best Buy in AMC

16   movie theaters throughout the country, Best Buy proceeded to introduce other faux movie

17   trailers, including those entitled "The Buffalo" (in which Native Americans are interrupted by

18   cell phone ringing during a buffalo hunt), "Pump up the Movie" (a parody of the "Bring It On"

19   cheerleading movie), and "Return of the Kwan" (a martial-arts themed spot reminiscent of

20   "Crouching Tiger, Hidden Dragon").  None of the spots was done with the permission or

21   authorization of Identity Arts.

22   　　　On November 14, 2005, Identity Arts filed the instant action against Best Buy et al.,

23   asserting five causes of action: (1) direct copyright infringement; (2) vicarious copyright

24   infringement; (3) contributory copyright infringement; (4) unfair competition under California

25   Business & Professions Code §17200; and (5) unjust enrichment.  The crux of Identity Arts'

26   complaint alleges that each of the above spots introduced by Best Buy is a derivative work

27   of the Submarine Spot, nearly identical in use of story structure, design, and relevant

28

United States District Court

For the Northern District of California

1    elements.

2       Identity Arts now seeks an order granting a preliminary injunction enjoining

3    defendant Best Buy from showing any derivative works of any sort – including the above

4    spots – pending resolution of the merits of the action.

5                       **DISCUSSION**

6       A.      Legal Standard

7       To prevail on a motion for preliminary injunction, plaintiff must show (1) a strong

8    likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if

9    preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)

10    advancement of the public interest (in certain cases).  See Rodde v. Bonta, 357 F.3d 988,

11    994 (9th Cir. 2004).  Alternatively, injunctive relief can be granted if the plaintiff merely

12    "demonstrate[s] ... a combination of probable success on the merits and the possibility of

13    irreparable injury...".  See id.

14       In a copyright case such as this one, a showing of reasonable likelihood of success

15    on the merits raises a presumption of irreparable harm.  See, e.g., Apple Computer Inc. v.

16    Formula Int'l Inc., 725 F.2d 521 (9th Cir. 1984).  Accordingly, the fundamental inquiry is

17    whether plaintiff can demonstrate reasonable likelihood of success on the merits.

18       B.      Legal Analysis

19       Best Buy raises two issues that it argues constitute a bar to the grant of Identity Arts'

20    request for preliminary injunction.  First, it argues that Identity Arts lacks standing to bring

21    this motion as to the Submarine Spot script, the rough cut Submarine Spot, or the final

22    Submarine Spot.  Second, Best Buy argues that even if standing exists, Identity Arts cannot

23    prove any likelihood of success on the merits of its copyright infringement claims.  The

24    court addresses each issue in turn.

25          **1.**      **Standing**

26       If Best Buy is correct that Identity Arts lacks standing, then Identity Arts' motion fails

27    at the outset.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (standing

28

**United States District Court**
For the Northern District of California

1  an "essential and unchanging part of the case-or-controversy requirement of Article III").

2  Best Buy asserts that Identity Arts lacks standing because (1) with respect to the

3  Submarine Spot script, Identity Arts is not the exclusive owner of the copyrights therein;

4  and (2) with respect to the rough cut Submarine Spot and the final Submarine Spot, both

5  are derivative works that Identity Arts failed to properly register for copyright protection.  To

6  support standing, Identity Arts points out that, since the filing of its complaint and this

7  motion, an assignment of rights has taken place granting Identity Arts the exclusive rights

8  to *all* works at issue, and an application is also now on file to register both the rough cut

9  Submarine Spot and the final Submarine Spot with the US Copyright Office.   As discussed

10  below, however, Best Buy is correct, and no standing exists.

11                    a.       Identity Arts as Exclusive Licensee

12  Title 17 U.S.C. § 501(b) provides that only "the legal or beneficial owner of an

13  exclusive right under a copyright" is entitled to bring an action for copyright infringement.

14  As Best Buy correctly points out, this provision requires that a plaintiff have an exclusive

15  right prior to bringing an action.  Here, however, the evidence demonstrates that Identity

16  Arts is *not* the owner of an exclusive right in either the Submarine Spot script, the rough cut

17  Submarine Spot, or the final Submarine Spot.

18  With respect to the Submarine Spot script, this is the only one of the three works at

19  issue that Identity Arts demonstrates is subject to copyright protection by virtue of a valid

20  registration certificate.  See Ex. A to the Declaration of David Janssen in Support of

21  Plaintiff's Motion for Preliminary Injunction ("Janssen Decl.").   Initially, this raises a

22  presumption of validity with respect to the copyright of the Submarine Spot script.  See,

23  e.g., Entertainment Research Group, Inc. v. Genesis Creative, 122 F.3d 1211, 1218 (9th

24  Cir. 1997); North Coast Indus. v. Maxwell, Inc., 972 F.2d (9th Cir. 1992).  However, Best

25  Buy can, and does, rebut this presumption.  See id.  It does so by demonstrating that the

26  Submarine Spot script does not owe its origin to Mr. Janssen as the sole author – as the

27  copyright registration states – but rather to Mr. Janssen and at least one other co-writer,

28

**United States District Court**
For the Northern District of California

1  possibly two.  Specifically, Best Buy points to (1) a prior version of the Submarine Spot

2  script that identifies Mr. Janssen and a Ben Nichols as co-authors, and (2) Identity Arts'

3  own (and other) website pages identifying both Ben Nichols and a David Bobrow as co-

4  authors.  See Exs. 3-7 to the Declaration of Joel D. Covelman in Support of Defendants'

5  Opposition to Plaintiff's Preliminary Injunction Motion ("Covelman Decl.").  Identity Arts

6  does not – or else cannot – dispute this evidence.

7        Since there is proof of more than one author for the Submarine Spot script, the only

8  right that Identity Arts can have in the script (through co-founder David Janssen) is a non-

9  exclusive one.  This is because, absent a joint agreement or an exclusive transfer of rights

10 by *all* authors of a copyrighted work, the only right that may be transferred by an individual

11 joint author is a non-exclusive right to the work.  See, e.g., Meredith v. Smith, 145 F.2d 620

12 (9th Cir. 1944).  Accordingly, and as stated at the outset above, this precludes Identity Arts

13 from proceeding for infringement under the copyright laws.  See 17 U.S.C. § 501(b).

14        Identity Arts attempts to fix this flaw by introducing evidence of belated assignments

15 of rights from Janssen, Bobrow and Nichols to Identity Arts.  See Exs. A-C to the

16 Declaration of Drexel A. Bradshaw in Support of Plaintiff's Motion for Preliminary Injunction

17 ("Bradshaw Decl.").  This is to no avail.  While those assignments purport to exclusively

18 transfer "all intellectual property rights and moral rights" in "certain proprietary products,"

19 the assignments themselves are wholly deficient.  See id.  As Best Buy points out, the

20 purportedly exclusive assignments nowhere state the nature of what is being assigned, nor

21 do they contain any description of any of the three works at issue here, nor do they even

22 contain an actual assignment provision.  See id.  In short, they are of dubious legal

23 significance.  Accordingly, it simply cannot be concluded that Identity Arts has sufficiently

24 demonstrated that it is the owner of an exclusive right in the Submarine Spot script, such

25 that it may maintain and institute an action against Best Buy for infringement of the script.

26        With respect to the rough cut Submarine Spot and the final Submarine Spot, Identity

27 Arts has great difficulty demonstrating how those two works could even form the basis for a

28

United States District Court

For the Northern District of California

1  preliminary injunction against Best Buy in the first place.  First, they are not specifically

2  alleged as a basis for copyright infringement in Identity Arts' complaint.  See, e.g.,

3  Yamaguchi v. United States Dept. of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997)

4  (allegations must "establish a basis for judgment against the defendant"); Conley v. Gibson,

5  355 U.S. 41, 47-48 (1957).  Second, the works are not registered with the U.S. Copyright

6  Office (see argument below).  Even assuming, however, that Identity Arts *could* succeed in

7  proving that it is entitled to allege a copyright infringement claim based on the two works,

8  Identity Arts' motion would still hinge on proving that it is the holder of exclusive rights in the

9  two works.  And for the reasons stated above, Identity Arts cannot do so on the basis of the

10  so-called exclusive assignments it has submitted into evidence on this motion.

11       Accordingly, Identity Arts has similarly failed to demonstrate that it is the owner of an

12  exclusive right in the rough cut Submarine Spot or the final Submarine Spot, such that it

13  may maintain and institute an action against Best Buy for infringement of these works.

14                    b.       Unregistered Derivative Works

15       As indicated above, Identity Arts has additional problems in proving standing with

16  respect to the rough cut Submarine Spot and the final Submarine Spot.  In order to assert

17  standing as to both works, Identity Arts must demonstrate registration of the two works with

18  the U.S. Copyright Office.  See 17 U.S.C. § 411(a) (registration as prerequisite for

19  infringement action); see also Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211 (9th

20  Cir. 1998) ("[c]opyright registration is not a prerequisite to a valid copyright, but it is a

21  prerequisite to a suit based on a copyright.").

22       Only after Best Buy pointed out in its opposition to plaintiff's motion that plaintiff

23  could not allege copyright infringement for unregistered derivative works did Identity Arts

24  register both the rough cut Submarine Spot and the final Submarine Spot.  Or rather,

25  Identity Arts filed an *application* to register the two works.  See Bradshaw Decl., ¶ 5.  The

26  question now before the court is whether that belated application is sufficient to allow the

27  court to presume registration of the two works for standing purposes.

28

**United States District Court**

For the Northern District of California

1    Identity Arts asserts that Ninth Circuit precedent allows the court to deem the two

2  works at issue registered as of the date of application, and to relate that registration back to

3  the date on which Identity Arts filed the instant action (Nov. 16, 2005).  For support, Identity

4  Arts relies on <u>Roth Greeting Cards v. United Card Co.</u>, 429 F.2d 1106 (9th Cir. 1970).

5    Reliance on this case, however, is misguided.  <u>Roth Greeting Cards</u> held that

6  plaintiff could institute his action as of the day that he filed his application for registration,

7  and that subsequently revised copyright applications as to the same underlying work would

8  relate back to the date of filing of the initial application (where the revisions addressed a

9  prior error).  It did *not* hold in favor of what Identity Arts argues here – that plaintiff could

10  first initiate an action, and *subsequent* to that, file an application for registration of the

11  works upon which the original action was based.  Nor has any other case so held, a fact

12  that counsel for Identity Arts conceded at the hearing on its motion.

13    Indeed, <u>Nimmer on Copyright</u> – the seminal copyright treatise – makes clear that,

14  while the court would be within its authority to allow an action to be initiated prior to actual

15  issuance of a registration certificate but *after* the filing of an *application* for registration,

16  there is a jurisdictional defect under the copyright statutes for actions that are initiated *prior*

17  to the sending of an application for registration.  <u>See</u> Nimmer on Copyright, § 7.16[B][1][a].

18    So here.  Identity Arts filed the instant action in November 2005, and by its own

19  admission, did not seek to register the rough cut Submarine Spot, or the Submarine Spot,

20  until January 4, 2006.  Accordingly, Identity Arts cannot maintain its copyright infringement

21  action with respect to the rough cut Submarine Spot or the final Submarine Spot, and it

22  lacks standing as to both on the instant motion before the court.

23    In sum, the above deficiencies – on both the exclusive rights issue and the

24  unregistered works issue – operate to deprive Identity Arts of standing.  This is enough to

25  deny Identity Arts' motion.   Even if the court could overlook the deficiencies, however, for

26  the reasons below, Identity Arts would still be incapable of proving a reasonable likelihood

27  of success on the merits of its copyright infringement action against Best Buy.

28

7

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.     Reasonable Likelihood of Success

To succeed on its infringement action against Best Buy, Identity Arts must prove (1) ownership of a valid copyright; and (2) defendant's copying of constituent elements of the original work.  See, e.g., Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

#### a.     Ownership

Proof of ownership breaks down into several constituent parts: originality in the author; copyrightability of the subject matter; compliance with applicable statutory formalities; and a transfer of rights between the author and plaintiff so as to make plaintiff the valid copyright claimant.  See generally Nimmer on Copyright, §13.01[A].  Generally speaking, a registration certificate constitutes prima facie evidence of most of these elements – i.e., originality, copyrightability, satisfaction of statutory formalities.  See id.  In applicable circumstances, the only element for which proof is still necessary is that of proving a valid transfer of rights between author and plaintiff.  Id.

As discussed above, the only work properly at issue before the court here is the rough cut Submarine Spot script, for which Identity Arts has provided a copy of the registration certificate.  See Janssen Decl., Ex. A.  As to this, Identity Arts has tendered evidence of all three co-authors' assignment of exclusive rights to Identity Arts.  See Bradshaw Decl., Exs. A-C.  Again, however, these assignments are deficient on their face as legally valid assignments.  As such, they fail to provide sufficient proof of ownership on the part of Identity Arts.

#### b.     Defendant's Copying of Original Work

The gist of Identity Arts' motion with respect to this second element comes down to whether or not Best Buy copied the work at issue – i.e., whether it had access to Identity Arts' work, and whether Best Buy's works are substantially similar to the original work at issue.  See, e.g., Newton v. Diamond, 349 F.3d 591 (9th Cir. 2003).

With regard to the access question, Identity Arts claims that it provided Best Buy

8

United States District Court

For the Northern District of California

1   with copies of the rough cut Submarine Spot and the final Submarine Spot.  Best Buy does

2   not dispute this, but asserts through declarations that it never had access to the Submarine

3   Spot *script*.  See, e.g., Declaration of Joseph Michaelson in Support of Defendants'

4   Opposition to Plaintiff's Preliminary Injunction Motion; Declaration of William Nordin in

5   Support of Defendants' Opposition to Plaintiff's Preliminary Injunction Motion.

6          Again, only the script is properly before the court, since the script is the only one of

7   the three works that was properly registered and properly the subject of the copyright

8   infringement claim.  And as to that script, Identity Arts provides no affirmative proof

9   controverting Best Buy's declarations, all of which establish that Identity Arts never

10   provided Best Buy with a copy of the Submarine Spot script, and that declarants have

11   never even seen the script.  See id.  Accordingly, without any such evidence, Identity Arts

12   cannot prove that Best Buy had the requisite access.

13          Similarly, Identity Arts would have an equally hard time demonstrating substantial

14   similarity.  This inquiry is highly fact specific.  The Ninth Circuit, in illuminating the

15   cornerstones of the inquiry, has used what it calls a "total concept and feel" approach.

16   See, e.g., Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir. 1970).  In sum,

17   the "total concept and feel" approach refers to a two-part test – the "extrinsic test," used to

18   determine similarity in general ideas, and an "intrinsic test," used to compare the particular

19   expression used.  See, e.g., Litchfield v. Speilberg, 736 F.2d 1352 (9th Cir. 1984).  Expert

20   testimony is particularly relevant to the former, while the latter focuses on a reasonable

21   person's sense of whether the expression used in competing works is similar.  Inherent in

22   all the foregoing, however, is the fundamental premise that copyright law does not protect

23   ideas; it can only protect particular expressions of ideas.  See, e.g., Olson v. Nat'l

24   Broadcasting Co., 855 F.2d 1446 (9th Cir. 1988).

25          Here, Identity Arts introduces on reply the expert testimony of Professor Robert

26   Vianello, who testifies via declaration as to the substantial similarity of the original

27   Submarine Spot work, and Best Buy's subsequent works.  This evidence, however, is

28

**United States District Court**
For the Northern District of California

1   insufficient to prove satisfaction of the extrinsic test as an initial matter.

2   Generally speaking, Mr. Vianello's testimony is devoted to drawing parallels between

3   the works in question, and he asserts that the thirteen original elements claimed by Identity

4   Arts are also found in Best Buy's subsequent works.  As Best Buy pointed out in its surreply

5   and at the hearing, however, in many instances Mr. Vianello's testimony improperly claims

6   general cinematic techniques and ideas as protectable expression.  For example, Mr.

7   Vianello asserts that the presence of on-screen characters who address the movie

8   audience directly is a protectable expression that is substantially similar in both the

9   Submarine Spots and in Best Buy's allegedly infringing works.  See Declaration of Robert

10  Vianello in Support of Plaintiff's Motion for Preliminary Injunction, ¶¶ 8-9.  In reality,

11  however, this is a cinematic technique familiar to many, including the court, which is several

12  decades old.

13  To be sure, Identity Arts would be correct in stating that at least some cases in the

14  past have found certain plot ideas, as expressed in dramatic and other works, to be

15  protectable.  See, e.g., Nash v. CBS, Inc., 899 F.2d 1527, 1540 (7th Cir. 1990) (holding

16  that West Side Story authors intentionally borrowed from Romeo and Juliet).  It is also true

17  that the Ninth Circuit itself has required a comparison of "plot, theme, dialogue, mood,

18  setting, pace, and sequence" as valid considerations under the extrinsic test analysis.  See

19  Litchfield, 736 F.2d at 1356.

20  Nonetheless, it is still difficult for Identity Arts to claim that its 13 elements are truly

21  elements of expression that are simulated identically by Best Buy in its subsequent spots.

22  This is because, as numerous cases have recognized, mere similarity of format, theme,

23  style, or setting is insufficient to give rise to substantial similarity.  Moreover, it has also

24  commonly been held that even if the plots of two works *are* substantially similar, there is no

25  liability if the trier of fact reasonably concludes that defendant copied only the basic idea,

26  and independently created a similar plot.  See, e.g., Data East USA, Inc. v. Epyx, Inc., 862

27  F.2d 204, 208 (9th Cir. 1988) (similar ideas in two video games).  This is the scenario that

28

1  rings most true here, upon review of the works at issue.

2      As such, the court need not consider the intrinsic test in order to conclude, as has

3  been evident from the beginning, that Identity Arts cannot make out a case for likelihood of

4  success on the merits of its claim regarding copyright infringement.

5      C.    Conclusion

6      For the above reasons, Identity Arts' arguments fail as to (1) standing; and (2)

7  likelihood of success on the merits of its copyright infringement claim.  Accordingly, Identity

8  Arts' motion is DENIED.

9

10  **IT IS SO ORDERED.**

11  Dated: February 10, 2006

12  _____
   PHYLLIS J. HAMILTON
   United States District Judge

United States District Court

For the Northern District of California

11